UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.D.B.R.,[1]<br><br>    Petitioner,<br><br> v.<br><br>MINGA WOFFORD, Field Office Director, Mesa Verde, Office of Detention and Removal, U.S. Immigrations and Customs Enforcement, U.S. Department of Homeland Security; et al.,<br><br>    Respondents. | No. 1:25-cv-02009-TLN-SCR<br><br>**ORDER** |

    This matter is before the Court on Petitioner J.D.B.R.'s ("Petitioner") Ex Parte Motion for a Temporary Restraining Order ("TRO"). (ECF No. 2.) For the reasons set forth below, Petitioner's motion is GRANTED.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

    Petitioner is a citizen of Nicaragua who entered the United States on or around February 1, 2022. (ECF No. 2 at 10; ECF No. 2-2 ¶ 2; ECF Nos. 2-3–2-4.) Petitioner had fled Nicaragua in January of 2022 due to persecution from being forced to work for a political group and being

---

[1] Petitioner concurrently filed a Motion to Proceed Under Pseudonym. (ECF No. 3.) For good cause shown, Petitioner's motion is GRANTED (ECF No. 3). Petitioner shall proceed under the pseudonym, J.D.B.R.

1

1   targeted by its members.  (ECF Nos 2-2 ¶¶ 11, 13; ECF No. 2-3.)  Shortly after entering the
2   United States, Petitioner was apprehended, processed, placed into removal proceedings, and
3   released on parole.  (ECF No. 2-2 ¶¶ 2–3.)  Upon release, Petitioner was given a phone and
4   instructed to report to the Immigration and Customs Enforcement ("ICE") office in Bakersfield,
5   California.  (*Id.* ¶ 3.)  Petitioner complied with the instruction and reported in-person to the ICE
6   office in Bakersfield, where he was informed that he was required to report weekly through a
7   phone application, respond to phone calls from officers, and appear in-person at the Bakersfield
8   ICE office when required.  (*Id.* ¶ 4.)  Petitioner has continuously complied with these reporting
9   requirements, including submitting weekly reports through the Intensive Supervision Appearance
10  Program ("ISAP") phone application.  (*Id.*)  Petitioner was never notified of any violations or
11  issues with his reporting.  (*Id.* ¶¶ 4–5.)  He has never been arrested and has no criminal history.
12  (*Id.* ¶¶ 6–7.)

13  Following his release, Petitioner settled in Stockton, California.  (*Id.* ¶ 6.)  Petitioner
14  works pursuant to an employment authorization and is the primary financial provider for his
15  family, including his elderly parents.  (*Id.*; ECF No. 2 at 10.)  Petitioner filed an application for
16  asylum in July of 2024 and is scheduled for a master hearing on January 16, 2026.  (ECF No. 2-2
17  ¶¶ 6–7.)

18  On Friday, October 24, 2025, Petitioner was notified that he needed to report for an ICE
19  check-in the following day, Saturday, October 25, 2025.  (*Id.* ¶ 8.)  Petitioner went to the ICE
20  office that Saturday.  (*Id.* ¶ 9.)  While he was waiting, an officer approached and said Petitioner
21  was under arrest for not taking required photos on time for his immigration check-ins.  (*Id.*)
22  Petitioner told the officer he had not missed any reporting dates and had proof, but he was still
23  detained and transferred to the Mesa Verde Processing Center.  (*Id.*; ECF No. 2 at 10.)

24  On December 28, 2025, Petitioner filed a petition for writ of habeas corpus challenging
25  his detention as violating his procedural and substantive due process rights.  (ECF No. 1.)  The
26  same day, Petitioner filed the instant Ex Parte Motion for a TRO.  (ECF No. 2.)

27  **II.    STANDARD OF LAW**

28  For a TRO to issue, courts consider whether Petitioner has established: "[1] that he is

2

likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The Court may weigh Petitioner's showing on each of the *Winter* factors using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a TRO even where there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, if "serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in Petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

**III.   ANALYSIS**[2]

   A.   Likelihood of Success on the Merits

Petitioner has established a likelihood of success on his procedural due process claim.[3] The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. *Id.* at 693–94.

---

[2] The Court finds Petitioner has met the requirements for issuing a temporary restraining order without notice. *See* Fed. R. Civ. P. 65(b). Petitioner has submitted the requisite affidavits and notified Respondents via electronic mail on December 24, 2025 that he would be filing the motion. (ECF No. 2-1 ¶ 4.) *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) (similarly finding requirements for TRO were met without notice); *Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (same).

[3] Because Petitioner is likely to succeed on his procedural due process claim, the Court need not address his substantive due process claim.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

As for the first step, the Court finds Petitioner has demonstrated that he has a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) ("*Pinchi*") (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M.*, 2025 WL 2617255, at *3.

Here, Petitioner gained a liberty interest in his continued freedom when he was released on parole in February of 2022. (ECF No. 2-2 ¶ 3.) Like in *Morrisey*, release from immigration custody created an "implied promise" that Petitioner would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. *Morrissey*, 408 U.S. at 482. Petitioner submits that he has complied with all the conditions of his release, including submitting weekly reports to ICE through ISAP, answering phone calls, and appearing in-person at the Bakersfield ICE office when requested. (*Id.* ¶ 4.) Petitioner has no criminal record. (*Id.* ¶ 6.) Petitioner's release for the past three years further strengthens his liberty

1  interest. As this Court has previously found, as have many other courts in this district when
2  confronted with similar circumstances, Petitioner has a clear interest in his continued freedom.
3  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's
4  actions in allowing petitioner to remain in the community for over five years strengthened
5  petitioner's liberty interest).

6  Petitioner states that during his arrest, an ICE Officer told Petitioner he was under arrest
7  because he had not been taking required photos on time for his immigration check-ins. (ECF No.
8  2-2 ¶ 9.) Petitioner refutes this accusation and maintains that he has submitted his weekly reports
9  as instructed, as well as answered phone calls from ICE officers and appeared in-person when
10 requested. (*Id.* ¶ 4.) Moreover, he was never informed of any violations or issues with his
11 reporting and to his knowledge was always compliant with the conditions of his supervision. (*Id.*)
12 At this juncture, the Court finds credible Petitioner's belief that he was in full compliance with
13 the terms of his supervision, preserving the full force of his liberty interest. *See*, *e.g.*, *Bernal v.*
14 *Albarran*, No. 25-CV-09772-RS, 2025 WL 3281422, at *6 (N.D. Cal. Nov. 25, 2025) (finding
15 detention of asylum applicant improper under § 1226(a), even if she violated the conditions of her
16 release, because she was not a danger to society or a flight risk). Petitioner is likely to succeed on
17 the merits of his constitutional claim.

18 As to the second step – what procedures or process is due – the Court considers three
19 factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an
20 erroneous deprivation of such interest through the procedures used, and the probable value, if any,
21 of additional or substitute procedural safeguards;" and (3) "the Government's interest, including
22 the function involved and the fiscal and administrative burdens that the additional or substitute
23 procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set
24 forth below, the Court finds Petitioner has established his due process rights were likely violated.

25 First, Petitioner has a substantial private interest in remaining free from detention. As
26 discussed above, Petitioner was released from immigration detention in February of 2022 and
27 since then has exercised his freedom, providing for his family and building a life for himself
28 outside the confines of detention. Accordingly, Petitioner has a profound private interest in his

return to liberty. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD, 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation here is considerable given Petitioner has received virtually no procedural safeguards such as a bond or custody redetermination hearing. "Civil immigration detention, which is nonpunitive in purpose and effect, is justified when a noncitizen presents a risk of flight or danger to the community." *R.D.T.M.*, 2025 WL 2617255, at *4 (internal quotation and citation omitted). Without a bond or custody hearing to determine whether Petitioner's detention is justified, the risk that Petitioner is being erroneously deprived of his liberty is high.

Finally, the Government's interest in detaining Petitioner without a hearing before a neutral decisionmaker is low, particularly as Petitioner has consistently complied with monitoring requirements imposed through ISAP, answered phone calls from ICE officers, reported in-person to the Bakersfield ICE office as required, and does not have a criminal record. As this Court has previously noted, it would be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his asylum petition than to continue to detain him. *See Pinchi*, 792 F. Supp. 3d at 1036 (similarly noting "the cost to the government of detaining [petitioner] pending any bond hearing would significantly exceed the cost of providing her with a pre-detention hearing.").

On balance, the Government's interest in detaining Petitioner without a hearing is low and does not outweigh Petitioner's substantial liberty interest or the risk of erroneous deprivation of liberty. Due process requires Petitioner receive a hearing before a neutral decisionmaker that complies with all applicable statutes and regulations if he is to be re-detained.

Having found Petitioner has a protected liberty interest and that due process requires Petitioner receive a hearing before a neutral decisionmaker prior to re-detention, the Court finds Petitioner has shown a likelihood of success on the merits.

B.     <u>Irreparable Harm</u>

Petitioner has also established he will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration

1  detention," including "the economic burdens imposed on detainees and their families as a result
2  of detention[.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. Petitioner has been
3  detained for approximately two months and is unable to care for or check on the wellbeing of his
4  elderly parents, for whom he is the sole provider. (ECF No. 2-2 ¶¶ 6, 10.) Further, "[i]t is well
5  established that the deprivation of constitutional rights 'unquestionably constitutes irreparable
6  injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427
7  U.S. 347, 373 (1976)). "When an alleged deprivation of a constitutional right is involved, most
8  courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*,
9  418 F.3d 989, 1001–02 (9th Cir. 2005); *see also Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir.
10 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm."). In addition
11 to harms imposed by his continued immigration detention, Petitioner has shown he is likely to
12 succeed on the merits of his constitutional claim. The Court thus finds Petitioner has
13 demonstrated irreparable harm.

          C.   Balance of Equities and Public Interest

15        As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the
16 balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F.
17 Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092
18 (9th Cir. 2014)). The Court finds there is no equitable reason that would tip the balance in the
19 Government's favor, because the Government faces no hardship. The Government "cannot
20 reasonably assert that it is harmed in any legally cognizable sense by being enjoined from
21 constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir.
22 1983). Rather, "it is always in the public interest to prevent the violation of a party's
23 constitutional rights." *Melendres*, 695 F.3d at 1002. Additionally, and as noted above, "the Ninth
24 Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz
25 v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal
26 citation omitted). In sum, the last two *Winter* factors also weigh in Petitioner's favor.
27        Having found Petitioner has satisfied each of the *Winter* factors, the Court GRANTS
28 Petitioner's Motion for a TRO.

**IV.     CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for a Temporary Restraining Order is GRANTED (ECF No. 2);
2. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011);
3. Petitioner shall be RELEASED IMMEDIATELY from Respondents' custody;
4. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a hearing before a neutral fact-finder where Respondents show: (a) material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.
5. Respondents are ordered to SHOW CAUSE why this Court should not convert this temporary restraining order into a preliminary injunction requiring Respondents to continue to abide by this Court's order.  Respondents shall file responsive papers by **Tuesday, January 6, 2026.**
6. The matter is not set for a hearing, though the Court may set one should it later be determined that a hearing is necessary.

IT IS SO ORDERED.

Date: December 30, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE