1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
9                        EASTERN DISTRICT OF CALIFORNIA
10

11  J.D. B.R.,

12                    Petitioner,              No. 1:25-cv-02009-TLN-CKD

13

14        v.                                   **ORDER**

15  MINGA WOFFORD, Field Office
    Director, Mesa Verde, Office of Detention
16  and Removal, U.S. Immigrations and
    Customs Enforcement, U.S. Department of
17  Homeland Security, et al.,

18                    Respondents.

19

20        This matter is before the Court on an order to show cause why a preliminary injunction

21  should not issue (ECF No. 8) after the Court granted Petitioner J.D. B.R.'s ("Petitioner") Motion

22  for Temporary Restraining Order ("TRO") (ECF No. 2).  Respondents filed a response.  (ECF

23  No. 9.)  For the reasons set forth below, the Court issues a preliminary injunction.

24        **I.    FACTUAL AND PROCEDURAL BACKGROUND**

25        Petitioner is a citizen of Nicaragua who entered the United States on or around February

26  1, 2022.[1]  (ECF No. 2 at 10; ECF No. 2-2 ¶ 2; ECF Nos. 2-3–2-4.)  Petitioner had fled Nicaragua

27  ─────────────────
    [1]        Some documents identify Petitioner's date of arrival as January 30, 2022.  (*See* ECF No.
28  9-1 at 2.)

                                        1

1  in January of 2022 due to persecution from being forced to work for a political group and being

2  targeted by its members.  (ECF No. 2-2 ¶¶ 11, 13; ECF No. 2-3.)  Shortly after entering the

3  United States, Petitioner was apprehended, processed, placed into removal proceedings, and

4  released on recognizance.[2]  (ECF No. 2-2 ¶¶ 2–3; ECF No. 9-1 at 9.)

5  Petitioner was enrolled in the Intensive Supervision Alternative Program ("ISAP").  (ECF

6  No. 2-2 ¶ 4.)  Between November 8, 2022 and September 16, 2025, Petitioner incurred 10 ISAP

7  compliance violations.  (ECF No. 9-1 at 8.)  Five violations were for "Missed Biometric Check-

8  In," three for "Successful Check-In Outside Zone," one for "Clear-Force Arrest Notification," and

9  one for "Missed Self Report Check-In."  (*Id.*)  Petitioner submits he was never informed of any

10  violations or issues with his reporting, and to his knowledge was always fully compliant with the

11  conditions of his supervision.  (ECF No. 2-2 ¶¶ 4–5.)  According to Petitioner, at no point did he

12  receive any warnings, notices of non-compliance, or indications that ICE intended to arrest him.

13  (*Id.* ¶ 5.)  He believed he was in good standing and following all rules as required.  (*Id.*)

14  Petitioner submits he has never been arrested in the United States or elsewhere and has no

15  criminal record.  (*Id.* ¶¶ 6–7.)

16  Following his release from immigration custody, Petitioner settled in Stockton, California.

17  (*Id.* ¶ 6.)  Petitioner was granted employment authorization and is the primary financial provider

18  for his family, including his elderly parents.  (*Id.*; ECF No. 2 at 10.)  Petitioner filed an

19  application for asylum in July of 2024 and was scheduled for a master hearing on January 16,

20  2026.  (ECF No. 2-2 ¶¶ 6–7.)

21  On Friday, October 24, 2025, Petitioner was notified that he needed to report for an ICE

22  check-in the following day, Saturday, October 25, 2025.  (*Id.* ¶ 8.)  Petitioner went to the ICE

23  office that Saturday.  (*Id.* ¶ 9.)  While he was waiting, an officer approached and said Petitioner

24  was under arrest for not taking required photos on time for his immigration check-ins.  (*Id.*)

25  Petitioner told the officer he had not missed any reporting dates and had proof, but he was still

26  detained and transferred to the Mesa Verde Processing Center.  (*Id.*; ECF No. 2 at 10.)  The

27

28  _____

[2]  Petitioner submits that he was released on parole (ECF No. 2-2 ¶ 3), however the Government's documents indicate he was released on recognizance (ECF No. 9-1 at 9).

1    Government's documents indicate Petitioner's order of release on recognizance was revoked by a

2    deportation officer due to noncompliance with ISAP.  (ECF No. 9-1 at 9.)

3         On December 28, 2025, Petitioner filed a petition for writ of habeas corpus challenging

4    his detention as violating his due process rights, as well as a motion for TRO.  (ECF Nos. 1–2.)

5    On December 30, 2025, the Court granted Petitioner's motion for TRO and ordered injunctive

6    relief, including Petitioner's immediate release from detention.  (ECF No. 8.)  The Court ordered

7    Respondents to show cause why a preliminary injunction should not issue on the same terms.

8    (*Id.*)  Having received Respondents' response, the Court now determines whether the relief

9    granted in the TRO should continue as a preliminary injunction.

10        **II.    STANDARD OF LAW**

11        For a preliminary injunction to issue, courts consider whether Petitioner has established

12   "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the

13   absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an

14   injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

15   Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild*

16   *Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

17        The Court may weigh Petitioner's showing on each of the *Winter* factors using a sliding-

18   scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a

19   preliminary injunction even where there are "serious questions on the merits . . . so long as the

20   [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in

21   the public interest."  *Id.*  Simply put, if "serious questions going to the merits were raised [then]

22   the balance of hardships [must] tip[ ] sharply" in Petitioner's favor in order to succeed on a

23   request for preliminary relief.  *Id.* at 1134–35.

24        **III.    ANALYSIS**

25        This Court already found Petitioner established each of the *Winter* elements sufficient to

26   warrant relief as set forth in the TRO.  (ECF No. 8.)  Because the standard for issuing a TRO is

27   "substantially identical" to the standard for issuing a preliminary injunction, *Stuhlbarg Int'l Sales*

28   *Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), the Court incorporates its

3

1    reasoning from the TRO and need not duplicate its analysis here.

2         In response to the order to show cause, Respondents argue a preliminary injunction should

3    not issue because Petitioner is subject to the mandatory detention framework of 8 U.S.C.

4    § 1225(b)(2) and the Department of Homeland Security ("DHS") may in its discretion revoke

5    Petitioner's release and detain him due to the ISAP violations pursuant to 8 C.F.R. 236.1(c)(9).

6    (ECF No. 9 at 3–6.)  Respondents' additional arguments — that Petitioner is not entitled to a

7    hearing or finding of changed circumstances prior to re-detention, the *Mathews* factors do not

8    apply, and Petitioner has not satisfied the final three *Winter* factors — are derivative of

9    Respondents' primary argument that Petitioner is subject to mandatory detention and has no due

10   process rights.  (*Id.* at 6–13.)  Finally, Respondents argue Petitioner's habeas petition is moot

11   since he has been released, and Petitioner's remaining requests for relief are beyond the scope of

12   habeas relief.  (*Id.* at 13–14.)

13        Courts nationwide, including this one, have overwhelmingly rejected Respondents'

14   argument on the applicability of § 1225(b)(2).  *See e.g.*, *Hortua v. Chestnut, et al.*, No. 1:25-cv-

15   01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal. Dec. 9, 2025); *Barco Mercado v. Francis*, No.

16   25-CV-6582 (LAK), 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (estimating over 350

17   cases ruled DHS's July policy improper across 160 different judges sitting in about 50 different

18   courts nationwide); *Mirley Adriana Bautista Pico, et al. v. Kristi Noem, et al.*, No. 25-CV-08002-

19   JST, 2025 WL 3295382, at *2 (N.D. Cal. Nov. 26, 2025) (collecting cases); *Armando Modesto

20   Estrada-Samayoa v. Orestes Cruz, et al.*, No. 1:25-CV-01565-EFB (HC), 2025 WL 3268280, at

21   *4 (E.D. Cal. Nov. 24, 2025) (collecting cases).

22        "These courts examined the text, structure, agency application, and legislative history of

23   1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that

24   does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo

25   Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12,

26   2025) (collecting cases).  In comparison, "[t]he government's proposed reading of the statute (1)

27   disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between

28   sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous;

1   and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v.*

2   *Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23,

3   2025) (collecting cases). For these reasons, the Court rejects Respondents' position and finds

4   Petitioner is not an applicant "seeking admission" subject to mandatory detention under

5   § 1225(b)(2). The Court likewise rejects Respondents' derivative arguments.

6          As to revocation of release, 8 C.F.R. § 236.1(c)(9) provides:

7              When an alien who, having been arrested and taken into custody, has
               been released, such release may be revoked at any time in the
8              discretion of the district director, acting district director, deputy
               district director, assistant district director for investigations, assistant
9              district director for detention and deportation, or officer in charge
               (except foreign), in which event the alien may be taken into physical
10             custody and detained. If detained, unless a breach has occurred, any
               outstanding bond shall be revoked and canceled.
11

12  8 C.F.R. § 236.1(c)(9). Respondents' argument that this code section justifies Petitioner's

13  mandatory detention fails for two reasons. First, there is no evidence on the record that

14  Petitioner's release was revoked by anyone with authority to do so. *See S-M-J v. Bostock*, No.

15  6:25-CV-01425-MTK, 2025 WL 3137296, at *4 (D. Or. Nov. 10, 2025) (similarly finding no

16  such evidence). Instead, the Government's records only include a notation that "Subject Order of

17  release on Recognizance is hereby revoked due to his noncompliance with [ISAP]," on a

18  document signed by an individual with the title of Deportation Officer. (ECF No. 9-1 at 9.)

19  Respondents make no claim that this individual is authorized to make such a determination under

20  8 C.F.R. § 236.1(c)(9). (*See generally* ECF No. 9.)

21         Second, "the government's discretion to incarcerate non-citizens is always constrained by

22  the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

23  Thus, even if DHS had discretion to revoke Petitioner's release, DHS could only wield that

24  discretion in a way that comports with due process. *See Garcia v. Andrews*, No. 1:25-CV-01006

25  JLT SAB, 2025 WL 2420068, at *9 (E.D. Cal. Aug. 21, 2025) (finding statutory authority to

26  revoke bond or parole "does not mean that DHS may exercise its discretion in a manner that is

27  inconsistent with constitutional requirements."). This Court previously found due process

28  required Petitioner receive a hearing before a neutral decisionmaker prior to re-detention. DHS's

5

1    discretion to revoke Petitioner's release does not negate the process he is due prior to any re-

2    detention.

3        Respondents' final arguments lack merit and are irrelevant to this Court's decision to

4    convert the TRO to a preliminary injunction.  Respondents' assertion that Petitioner's habeas

5    petition is moot due to his release misunderstands the nature of preliminary relief.  This Court

6    granted Petitioner temporary relief pending final resolution on the merits of his habeas petition.

7    Unless the Government means to concede that Petitioner's re-detention was unlawful, his petition

8    remains unresolved.  Respondents' other assertion that Petitioner's request for relief seeks to

9    "create an affirmative right completely absent from the governing statute" (ECF No. 9 at 14),

10   misrepresents Petitioner's submission.  Moreover, Respondents seem to forget that "District

11   Courts possess broad equitable authority to remedy a likely constitutional violation" and "to enter

12   appropriate injunctive relief to remedy ongoing violations." *Zepeda Rivas v. Jennings*, 845 F.

13   App'x 530, 535 (9th Cir. 2021) (cleaned up).

14       Petitioner is entitled to constitutionally compliant due process when the Government

15   revokes a conferred liberty interest.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due

16   Process Clause applies to all 'persons' within the United States, including noncitizens, whether

17   their presence here is lawful, unlawful, temporary, or permanent.").  As this Court held

18   previously, Petitioner gained a protected liberty interest in his continued freedom when he was

19   released in February of 2022.  (ECF No. 8 at 4–5.)  Petitioner was entitled to a hearing before a

20   neutral decisionmaker to determine whether his re-detention was warranted, and that process was

21   denied.  (*Id.* at 5–6.)

22       Accordingly, to prevent further irreparable harm, the Court GRANTS a preliminary

23   injunction as set forth below.  IT IS HEREBY ORDERED:

24       1.  Respondents are ENJOINED AND RESTRAINED from imposing additional

25           restrictions on Petitioner's terms of release, unless such restrictions are determined to

26           be necessary at a future pre-deprivation/custody hearing.

27       2.  Respondents are further ENJOINED AND RESTRAINED from re-arresting or re-

28           detaining Petitioner absent compliance with constitutional protections, including

seven-days' notice and a hearing before a neutral fact-finder where Respondents show: (a) material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.  At any such hearing, Petitioner shall be allowed to have his counsel present.

3.  Pursuant to Local Rule 302(a), this matter is hereby REFERRED to the assigned Magistrate Judge for further proceedings.

IT IS SO ORDERED.

Date: January 28, 2026

_____

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE